SEILON, INC., Plaintiff,

v.

BREMA S.p.A.,
Dardanio Manuli S.p.A.,
and
Breda Finanziaria S.p.A., Defendants.
Civ. No. C 67–52.

United States District Court
N. D. Ohio, W. D.
July 25, 1967.

LeRoy W. Sigler, Toledo, Ohio, Duer & Taylor, New York City, for plaintiff.

Fuller, Seney, Henry & Hodge, Toledo, Ohio, for defendants.

## MEMORANDUM RE MOTION TO DISMISS

DON J. YOUNG, District Judge.

This is an action by a Delaware corporation maintaining its principal place of business in Ohio against three Italian corporations. Service was made upon defendants by serving the Secretary of the State of Ohio. This Court has jurisdiction over the subject matter of the suit by reason of diversity of citizenship. The defendants have filed a motion to dismiss the complaint on the grounds that the Court lacks jurisdiction over the persons of defendants, improper venue, insufficiency of process and insufficiency of service of process.

With respect to venue, the defendants' motion is not well taken. The general venue statute provides that an alien defendant may be sued in any district, 28 U.S.C. § 1391(d) and this rule applies to alien corporations as well as individuals. 1 Moore, Federal Practice ¶ 0.142[6]. Therefore, the questions to be decided are whether service was made in accordance with the law of Ohio and whether defendants can be constitutionally subjected to the jurisdiction of this Court.

The facts which gave rise to this action have been set forth in the complaint and an affidavit filed by the Secretary of the plaintiff corporation. No counter-affidavit has been filed by defendants so the facts as stated by plaintiff will be taken as true for the purposes of this motion. On March 19, 1962, plaintiff entered into two contracts with defendant Dardanio Manuli S.p.A. Each contract recites that they were entered into in Ohio and acknowledged before an Ohio Notary Public. These contracts provided that Dardanio Manuli S.p.A. might organize a corporation in Italy and substitute such corporation for Dardanio Manuli S.p.A. as a party thereto.

Subsequently, defendant Brema S.p.A. was formed in Italy and executed another contract with plaintiff. This contract is substantially the same as the earlier contracts, and was entered into rather than substituting parties to the earlier contracts as previously planned. This contract does not state the place where it was executed. Plaintiff acknowledged its signature in Ohio. The substantive terms of the contract were briefly as follows: Plaintiff would design a tire and tube factory for defendant, furnish technical and manufacturing information relating to the manufacture of automotive vehicle tires and tubes, and sell, within specified limits, to the defendants tires and tubes manufactured by plaintiff for resale in Italy until the factory was in production. Also, plaintiff was required to maintain an expert at the factory in Italy to advise defendant.

Brema was to sell tires and tubes to plaintiff at a later date.

Plaintiff's secretary's affidavit states that plaintiff did the planning and prepared the sketches for the factory in Ohio, during the period while Dardanio Manuli S.p.A. was still a formal party to the contract. Thereafter, plaintiff continued to furnish plans and technical advice concerning the buildings and equipment to Brema S.p.A. Plaintiff also trained employees of Brema in Ohio. Brema S.p.A. purchased tires from plaintiff as specified in the contract.

The contract also provides that in the event of any disagreement, the Italian courts will have jurisdiction over the suit. However, this provision cannot deprive this Court of jurisdiction. Alcaro v. Jean Jordeau, Inc., 138 F.2d 767 (3d Cir. 1943).

The complaint states three causes of action. The first is against Brema S.p. A. for goods sold and delivered. The second is also against Brema S.p.A. seeking damages for breach of the contract. The third cause of action is against Brema S.p.A. and also Dardanio Manuli S.p.A. and Breda Finanziaria S.p.A. alleging that the three corporations conspired together to break the contract. Breda Finanziaria S.p.A. is apparently a substantial stockholder in Brema S.p.A.

Since service was made by serving the Secretary of the State of Ohio, authorization for such procedure must be found in the Ohio statutes. Ohio Revised Code section 2307.382 reads in part as follows:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from a person's:

"(1) Transacting any business in this state;

\*　　\*　　\*　　\*　　\*　　\*

"(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or de-

rives substantial revenue from goods used or consumed or services rendered in this state; \* \* \*.

"(B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."

This is the Ohio "long-arm statute" which was passed in September of 1965. Insofar as this Court can determine, there is no case in the Ohio courts which has directly construed the provisions herein relevant, although one federal court has had an issue under the first section of the statute. Am. Compressed Steel v. Pettibone Mulliken Corp., 271 F.Supp. 864, 11 Ohio Misc. 1 (S.D.Ohio 1967). This Court is, however, bound to decide the case as an Ohio court would, applying Ohio law.

The first state to enact a long-arm statute was Illinois. It is generally thought that the Illinois Legislature intended to base the Act on International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945) and that it was intended to expand the jurisdiction of the state to the limits of the due process clause of the fourteenth amendment. See comment, Jurisdiction under the Ohio "Long-Arm" Statute—Problems of Interpretation and Application 35 U. Cinc.L.Rev. 157, 160 (1966). Furthermore, the notes to the Uniform Interstate and International Procedures Act which is substantially similar to the Ohio and Illinois acts indicates that the Uniform Act should be interpreted broadly.

The Supreme Court of Ohio has said that when the Ohio Legislature has adopted statutory provisions from another state, the construction given the provision in that state will be given great weight. Schneider v. Laffoon, 4 Ohio St.2d 89, 212 N.E.2d 801 (1965). Therefore, this Court believes that the Ohio Legislature intended that the Ohio long-arm statute be interpreted to give the courts of the State of Ohio jurisdiction

in all cases where the Constitution of the United States permits it unless the act provides otherwise.

The statute provides, however, that when jurisdiction is based solely on this section, only a cause of action arising from acts enumerated may be asserted against the defendant. Therefore, it is necessary to construe each subsection separately to see if jurisdiction may be assumed.

Several decisions have been rendered outside Ohio involving the issue of whether certain activity is sufficient to constitute "transacting any business" in the state within the meaning of the first subsection. In Longines-Wittnauer Watch Co. v. Barnes & Reinecke Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), plaintiff brought suit against a foreign corporation in New York for breach of warranty. Defendant sent several key officers into the state of New York to discuss the terms of the agreement and spent three months at plaintiff's plant in New York supervising the installation and testing of a complex machine. A supplemental contract for the sale of the machine was executed in the state. There were apparently no other contacts with the state of New York, yet the New York Court of Appeals held that defendant was "transacting business" within the meaning of the "long-arm" statute.

In Kropp Forge Co. v. Jawitz, 37 Ill. App.2d 475, 186 N.E.2d 76 (1962), defendant, a New York corporation, agreed to purchase from plaintiff some equipment located in plaintiff's plant in Illinois. Defendant visited plaintiff's premises and inspected the equipment and made arrangements for its removal. The contract was finally consummated within the state. The court said that either the making of the contract itself, or the activity in furtherance of it, while defendant was physically present in Illinois was the transaction of business within the meaning of the Illinois statute.

In Am. Compressed Steel Corp. v. Pettibone Mulliken Corp., supra, the district judge construed the Ohio statute to reach a Missouri corporation which was not "doing business" in Ohio in the generally accepted sense of that term. The Vice President and a manufacturer's representative of defendant came to Ohio twice to negotiate the manufacture and sale of a machine to an Ohio corporation. The manufacturer's representative was authorized to solicit business in Ohio and was an independent contractor. He could not make sales. The contract was signed by the plaintiff in Cincinnati but the court attached no significance to this. Defendant's personnel also delivered drawings for the proposed machines to plaintiff in Ohio. The court held that this defendant was subject to its jurisdiction, but that the parent corporation, which had no other contacts with Ohio, was not amenable to service of process in Ohio.

■ It might be argued that it should take more contacts with a state to sustain jurisdiction where the defendant is a corporation which is incorporated under the laws of a foreign country rather than another state within the United States. However, the Seventh Circuit has sustained jurisdiction under the Illinois Act of a Swedish corporation in a case with facts similar to the case at bar. National Gas Appliance Corp. v. AB Electrolux, 270 F.2d 472 (7th Cir. 1959). In that case a substantial amount of the negotiations occurred in Illinois and the contract was made by mail. An agent of defendant spent several days in Chicago before the consummation of the contract. From the above cases, it can be seen that a single transaction may have such a substantial connection with a state that a nonresident party to that transaction may be subjected to the jurisdiction of that state. See also, McGee v. Int'l Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Temco, Inc. v. General Screw Products, Inc., 261 F.Supp. 793 (M.D.Tenn.1966).

■ The facts of the present case indicate that this Court has jurisdiction over Brema S.p.A. The contract was signed and acknowledged by plaintiff in

Ohio after defendant had signed. At least part of the performance of the contract took place in Ohio. Plaintiff did some of the planning and preparation for the factory in Ohio. Brema purchased goods from an Ohio corporation, and sent several of its employees into the state to be trained by plaintiff.

■ It is argued that this construction of the Ohio statute would be unconstitutional. The landmark case in this area is International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154 (1945). The Supreme Court there decided that due process does not require that the defendant be "doing business" within the state but that he have certain minimum contacts with it and that the maintenance of the suit not offend traditional notions of fair play and justice. Brema entered into a contract with an Ohio corporation which provided for the creation of a business. Pursuant thereto, several actions took place in Ohio, and Brema sent its employees to Ohio to be trained. These contracts are sufficient to satisfy the "minimum contacts" test.

Defendant relies rather heavily on the Sixth Circuit case of Velandra v. Regie Nationale Des Usines Renault, 336 F.2d 292 (6th Cir. 1964). In that case a French corporation sold automobiles to its New York subsidiary which in turn distributed them to dealers throughout the United States by means of regional distributors. One of these distributors, an Illinois corporation, was a wholly owned subsidiary of the New York corporation. This distributor carried on substantial activities in Michigan and delivered the Renaults to Michigan dealers. The cars were distributed with a manufacturer's warranty. Plaintiff was a Michigan citizen who was injured in a Renault and sued in the United States District Court in Michigan for negligent manufacture and for breach of express and implied warranties. The Court of Appeals held that there was no jurisdiction. However, the real basis of that decision was that the mere ownership of stock in a corporation which does business in Michigan is not enough to subject the parent corporation to the jurisdiction of the Court. This, coupled with the delivery of cars into the state with defendant's warranty, was not sufficient to create jurisdiction. In the present case, Brema had sufficient contacts with Ohio to establish jurisdiction independently of any relationship between it and another corporation by reason of stock ownership.

■ However, this Court does not have jurisdiction over the persons of Dardanio Manuli, S.p.A. or Breda Finanziaria S.p.A. Although Dardanio Manuli, S.p.A. was the original contracting party and therefore has had some contact with the State of Ohio, it is not necessary to decide whether it was "transacting business" within the first subsection of the statute. The statute says that a court may exercise jurisdiction pursuant to this statute "as to a cause of action arising from the persons" doing certain enumerated acts. The only cause of action stated against either of these defendants is for a conspiracy to cause Brema to breach its contract with plaintiff. Thus, although Dardanio Manuli S.p.A. may have transacted certain business in Ohio, the cause of action for conspiracy arose because of actions which took place outside the state.

If this Court has jurisdiction over the defendants on the conspiracy charge under this statute, it must be pursuant to the fourth subsection which provides for jurisdiction as to a cause of action arising from a person causing tortious injury in this state by actions outside the state. But this section only applies "if he regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state." None of the defendants regularly do or solicit business in Ohio, or in any way have sufficient contact with Ohio to meet the requirements of this subsection. This Court does not have jurisdiction over

Dardanio Manuli S.p.A. or Breda Finanziaria S.p.A.

The results of this case may seem harsh to some because it appears to be making a ruling as to the subject matter jurisdiction of the Court. However, it is merely a holding, based on the language of the statute, that the cause of action must either arise from the contacts which defendant has had with this state or that defendant also regularly do or solicit business, or engage in some persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in the state. Thus, the logical result is reached that where the cause of action arises because of acts done outside the state, more contact with the state is required to sustain personal jurisdiction over the defendant than if the cause of action had arisen as a result of actions or omissions in Ohio.

Defendants' motion to dismiss will be sustained with respect to Breda Finanziaria, S.p.A. and Dardanio Manuli, S.p.A., and overruled with respect to Brema, S.p.A. An order will be entered accordingly.